We are ready to hear argument now in our third case of the day, the Zurich American Insurance Company v. Ocwen Financial. Mr. Lumpkin. Good morning, and may it please the Court. My name is Hugh Lumpkin of Reed Smith. Along with me virtually today is Mr. Ghaliba of the Fern. We represent Ocwen Financial and Ocwen Women's Servicing. The simple issue on this appeal is, considering all of the allegations in the underlying First Amendment complaints in the Beecroft Action, whether even a single allegation or claim in those complaints yields a possibility of coverage. Mr. Lumpkin, forgive me, but I really want to start with something. With the question about page 27 of your opening brief, where you set forth the language of exclusion one and exclusion two. And what I need to know, please, are those correct quotations? They appear identical to each other. And yet, at the top of the next page, there is a discussion of, quote, subtle differences. And they do not appear to match the language cited by Zurich and by the district court. I'm trying to figure out what's going on there. I'm glad you raised that point, because I'm trying to figure out what's going on there as well. It appears that in putting these exclusions into the brief, we repeated the same exclusion. The subtle difference that the brief was trying to explain is that one of the exclusions contains language that allows for the exclusion to also include common law claims of the same type. One exclusion does not, the other one does. And that is the subtle difference between what the district court and opposing counsel concede leads to a single exclusion, if you will, which excludes the same conduct. In other words, both exclusions are intended to exclude the same conduct. And I apologize. Thank you for pointing that out. Thank you. As you're aware, the bar to finding a duty to defend is exceedingly low. I'm not going to go into all of the law that the Seventh Circuit or, for that matter, Illinois courts have gone into. But the bottom line is, if a single allegation or claim in a complaint yields a possibility of a duty to defend, there's a duty to defend oath. And here, the only basis for Zurich to claim that there's no duty to defend is an exclusion. Where you have an exclusion from coverage, the allegations of the underlying complaint must fit entirely within the scope of the exclusion. If there's any doubt about that, a duty to defend the entire suit is owed. Zurich has claimed, and the district court agreed, that the allegations of the Beecroft complaints fall entirely within the violation of statute's exclusions. Those exclusions collectively preclude coverage for alleged violations of the Telephone Consumer Protection Act or TCPA or the Telephone Consumer Protection Act. They also exclude, and we agree with this, common law claims, but only where those common law claims are based solely on conduct that also violates the enumerated statutes. So, Mr. Lumpkin, I wonder if, rather than building up from the bottom, we could go the other way. Looking at this complaint, the operative complaint, there are just these couple of places that you've zeroed in on. I wonder if you could just review what you think takes this complaint beyond the exclusions. I understand you to be saying it's the reference to the home telephone and that you think that the district court's understanding about these calls as being annoying, abusive, or harassing shouldn't have been done, according to you, because it was an issue of fact. Boy, it seems awfully incidental to me. And then there's an and or negligently, and I never even know what and or means. So, but the notion that there might be some negligence, but could you just like bullet point review where you think this complaint survives this exclusion? Certainly. And I agree with you, by the way. We have in the 11th Circuit some very nice decisions that talk about the utility of and or and the fact that it really doesn't mean anything. And I agree, by the way, that labels aren't necessarily what triggers a duty to defend, rather than what does trigger a duty to defend. They're facts. And here the facts are in two different buckets. First, you have allegations in the complaint that Ocwen attempted to collect the debt through an admixture of telephone calls to a cell phone, telephone calls to a landline, which aren't prohibited by the TCPA, letters and billing statements. All of those things need to fall within one of the enumerated statutes for the common law claim, which is also based on that comment to likewise be excluded. First, let's talk about the calls to the home telephone call, concededly covered under the TCPA, because those calls were met by a live operator, and the TCPA precludes recorded messages. It doesn't preclude calls where a live operator engages with the person who allegedly owes the debt. It is true that the complaint alleges that Ms. Beecroft asked Ocwen to stop calling. But can I stop? If you're looking at, let's see, this is part of the complaint. This conduct include, it should say included, over 58 phone calls to her cellular telephone. Okay, that would be a problem. And then it just sort of vaguely says, an additional calls to her home phone in an attempt to collect a loan that she discharged in bankruptcy, despite telling Ocwen to stop. So, boy, you're putting a lot of weight on that little addition, and additional calls to her home phone, like one, 20? What are we, I'm thinking of the Twombly-Iqbal pleading standard, to be honest, and wondering if this is enough to get you over the line. And we believe it is. If it was only two calls, I might have an issue, but I don't know how many calls were made to her landline. All we know is that she answered two. We also don't know when she told Ocwen to stop calling her, because that's not alleged in the complaint either. And I would point out that some of the decisions that have dealt with these calls to a cell phone, as an example, have found 149 calls in a two-month period to be insufficient to find a violation as a matter of law, or intent to harass, abuse, or annoy. These are issues of fact. That is, how many calls go over the bar, to use your phrase. And that is not something the court should determine as a matter of law in determining whether or not a duty to defend is owed. What's her burden of presenting allegations, though? It's her home phone. This isn't one that seems to me would be exclusively within the knowledge of the defendant. Why can't she allege how many calls there were? She alleged approximately 58 calls. Well, that was the cell phone, though. She doesn't put a number on the home phone, which is what you're relying on. In part, I am. And I would also point out that even calls to a cell phone aren't necessarily violative of the TCPA unless they are initiated using a prohibited auto dialer. We don't know that either because of the amendments to the FCC regulations that talk about what types of dialers are prohibited. Here, if there's human intervention, they're not prohibited. What is your best support for the idea that she has to use these magic words, harass, abuse or annoy? She certainly seems to allege conduct that hits that description. She calls the calls unlawful and offensive. She describes the level of stress those calls caused, including a miscarriage. It seems a stretch to read it any other way. I mean, why would a bill collector call a person on a cell phone 58 times? I mean, not to ask, how is your day going? And that would be my preference as well. But the fact of the matter is, Ms. Breedcroft does allege she was called 58 times. And whether you or I find that offensive, and we might, is not the question here. The question here is whether that's sufficient to determine as a matter of law that there was an intent to harass, annoy or abuse. And cases such as Brown v. IC System, Inc., which is an Illinois decision from 2019, say the general rule is that whether the volume and pattern of death letters are false violates the FDCPA as a jury question. And this case warrants no exception. In fact, the cases that have found that there's an intent to harm that can be inferred as a matter of law are typically cases such as sexual molestation or where the person who's seeking coverage has been convicted of a crime. Otherwise, whether or not the level of calling and the timing of it, bear in mind even the allegations of the complaint reflect these calls were made during ordinary business hours, not weekends. And that we don't know whether they stopped calling her once she was asked, she asked them to stop. We don't know when that happened. Frankly, this complaint is a mishmash of conclusions and facts, some or all of which may be covered depending upon how the case turns out at the end of the trial level. Now this case was settled so we don't know that for a fact, but we do know that there are enough allegations here that fall within the potential for coverage, particularly on the privacy claim, that a duty to defend should be valid. Is negligence, in your view, a factual allegation or a legal conclusion? Are there any factual allegations in her complaint that suggests that Ockwin was acting negligently at any time? I mean, it's a bit difficult to read the complaint as alleging anything other than intentional conduct. Well, I have curiosity about this entire set of facts. For example, what is Ockwin doing trying to collect the debt that was discharged four years before and the property foreclosed upon and sold in the sheriff's office? Why did it receive this particular debt for collection under the circumstances? And what did it understand when it did? If Ms. Beecroft told him to stop calling, when did she tell him to do that? And did Ockwin stop calling within a reasonable time thereafter? I don't know those facts. So you're right. This complaint doesn't contain enough allegations to let us draw a settled conclusion as a matter of law that there was an intent by Ockwin to cause her harm. It's customary in this setting, by the way, that calling a phone call is intentional. I mean, calling a home phone is intentional. And that is the intent to violate someone's inclusion. What this complaint doesn't tell us, however, and it's a jury question, is whether the volume of calls, the timing of calls, is enough to draw a conclusion as a matter of law. We can't do that on this record. If the court please, I'll reserve the rest of my time for rebuttal. Certainly, Mr. Lumpkin. Mr. Morris. Thank you. May it please the court, I am Anthony Morris, and I represent Zurich American Insurance Company, an American guarantee and liability insurance company. The district court got it right when it determined that the violation of exclusions bar coverage for the statutory and common law claims because the alleged injury in the intrusion upon seclusion claim arises out of any actual or alleged violation of the statutes. The court here correctly applied GM sign versus State Farm. There, the court said you have to determine but for the statutory violations, would there be a cause of action? And that's exactly what the court held here. The court noted that Mrs. Beecroft said throughout her long complaint that the calls were illegal, that they caused her harm. They were highly offensive. They, at all times, were done unfairly, unlawfully, intentionally. They were done willingly, knowingly. If we look at. Mr. Morris, could I ask you, I guess the position that your opponent urges most strenuously is that there were, within the allegations of the complaint, I have to add editorially. There are not many of them, but you can find allegations that she received a phone call at her home on a landline and there was a live operator at the other end. So it was outside the scope of the T.C.P.A. And why does that not in the four corners show that something that would trigger coverage was there? Well, Your Honor, for one thing, the complaint doesn't say that. If you look at the complaint in the preparatory language, Miss Beecroft talks about the 58 phone calls to herself. Those are the cell phones, right? Right. Immediately following that, she talks about she answered two calls. Just say what type of calls. It is more than 110 paragraphs later that she makes any mention of a home call. So there is nothing in this complaint that says that the two calls she answered were to her home. That's just not there. That's something that Ocwen is trying to read into this complaint, and they're not allowed to do that. So you're just saying contextually, but I mean, I did wade through the complaint and saw what you're talking about. There are these sort of allegations. I'm wondering if they are specific enough for pleading purposes that Ocwen intentionally and or negligently injured her by calling her cell and home phones. And I don't know what and or negligently means actually here. But if said Ocwen intentionally in some instances and negligently in others injured her by calling her home and cell phones, maybe that's what she means. Well, look at what she's actually saying in the invasion of privacy claim. She is saying in paragraph 143 that the 58 calls were made to her home on a cell to her cell phone. I'm sorry. Right. In paragraph 141, which is the preparatory language for that privacy claim. She talks about Congress and its intent in passing the Fair Debt Collection Practices Act. In paragraph 144, she then goes in and uses language that says that they made phone calls to her cell phone and her home phone in an attempt to collect a debt that had been discharged in bankruptcy. So she is alleging their FDCPA violation. Those are the two violations that are the bedrock for her invasion of privacy claim. She's not saying that the home phone calls violate the TCPA. In fact, the court didn't rule that. Nowhere did the court rule that. She's saying that the 58 cell phone calls violated the TCPA and that the combined calls to her cell phone and her home were unfair debt collection practices under that act. So everything that she is alleging and also keep in mind that she has incorporated everything in the complaint into this count. So there is no allegation stand alone that doesn't come under the guise of a statutory violation. Mr. Lumpkin is talking about possibilities. Now, he's saying that there are possibilities here that could have been negligent. Well, for one thing, in Step Fast versus Caremark, the court said that you intend the words intentionally and willfully are the end or the paradigm of intentional conduct. And they are antithesis to negligent conduct. And that's exactly what's happening here. She used the word twice in her complaint without any allegations of breach of duty, without allegations of what that duty might have been. It is just an unpleaded scenario that GM signed would have put forward. So that that really doesn't work here for them. They make the argument that, well, we don't know how many times she called the home. Well, we do know that she specified that they called the home, the cell phone 58 times. We do know that she said that there were some calls to her home. Illinois is a pleading state. We don't know how many calls that was. She doesn't detail those calls. She doesn't say that she answered those calls. And if anything, that fits within GM's sign, where it is an unpleaded scenario. Usually, when courts look at these actions, they do consider as one factor the number of calls. And that seems to be what ACWIN is hanging their argument on, that, yes, there may be cases out there that say that you need more calls. But that's not what the issue is here. The district court said that the FDCPA prevents calls from a debt collector causing a phone to ring repeatedly and continuously with the intent to annoy, abuse, and harass. And because Beecroft pleaded for the calls to stop, ACWIN's calls were meant to annoy and harass. That is what the district court held. The district court benched its decision on the fact that she asked for them to stop, and they didn't. And so, actually, I guess ACWIN's response is, do we know that this simple request is enough as a matter of fact to show the intent to abuse, harass, et cetera, annoy, abuse, or harass? Or do we need more factual investigation of that discovery, et cetera? Well, based upon other federal court cases, we don't need additional fact discovery. For instance, the Eastern District of Illinois, in the Reid case that's cited in our brief, they set out certain examples for when a court can find that there was intent to harass. They set out five or six of them that they based on from a California federal case. And one of those was specifically that a debt collector can harass when it continues to call after being asked to stop. That is one of just a few exceptions in there that sort of make it a per se violation. And that's what the court relied on here. The court didn't actually rely on the number of calls for the FDCPA claim. And ACWIN is making the argument that certain things come outside the TCPA. But that doesn't really matter here because the majority of the court's order was based on the FDCPA. And it is without question that looking at the complaint, that intentional conduct was ubiquitous throughout the complaint. That she asked them to stop, and they didn't. And that her injuries are based strictly on conduct that is alleged to violate the TCPA and the FDCPA. That fits within the exclusion. And if we look at courts that have looked at GM signed after that decision came down, in particular, the Addison Automatics case, Illinois case, the court said, what is the factual cause of the injury in the complaint? Her factual cause here is the 58 telephone calls and then those calls and the home calls. That's what she alleges in paragraph 143 and 144, plus incorporating everything before that. And the court there said, so long as the alleged injury, quote, arises directly or indirectly out of any action that violates or is alleged to violate the TCPA, the statute addition there, the claims asserting the injury, whatever the particular legal theory may be, fall within the violation of law exclusion. So courts have reached a similar conclusion as the district court here. And all one has to do is look at the complaint and actually read the allegations, which obviously the court has done. And one will see that the invasion of privacy count, the common law count, is based solely on activities, on actions that are alleged to violate the TCPA and the FDCPA. And for that reason, the district court got it right. Thank you. Thank you, counsel. Anything further, Mr. Lumpkin? I'll take less than two minutes and 42 seconds. And by the way, before I get off, I want to thank the court for allowing us this opportunity. Counsel says that Beecroft pleaded for augmented stock. And that's actually the finding that the trial court judge made. We don't know that's true or when it happened. We don't have any of the transcripts of the calls. And frankly, when a carrier in Illinois initiates a declaratory action or defends under reservation of rights, it has the right to introduce evidence towards the pleadings that would bring the case within an exclusion from coverage. Here we have a simple record consisting of what are concededly very ambiguous and uncertain allegations in this complaint. That it's long doesn't help. It just makes it harder to read, frankly. You asked whether or not there are allegations of home phone calls earlier on in the complaint. There are. Paragraph 14 of the first amended complaint says, despite the plaintiff having no remaining legal obligation to pay the mortgage, Ockwood's collection efforts included letters, billing statements, and repeated robocalls, a label, to plaintiff's cellular and home telephone. I checked to see if the second amended complaint had the same convention. It does. It appears on page 4, appendix 296, at the top. Immediately thereafter, defendant Ockwood began attempting to collect the alleged balance due. And the efforts included letters, billing statements, and repeated robocalls to plaintiff's cellular and home telephone calls. The fact of the matter is, and no one can deceive this, not all of the conduct alleged violates either the TCPA or the FDCPA. Because in order for the conduct to violate the FDCPA, there must be an intent to injure. And that is a question of fact which should be resolved by the trier of that.  Thank you very much.